## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID MAGERMAN,

        Plaintiff,

   v.

ROBERT MERCER,

        Defendant.

Civil Action No. 2:17-cv-03490-CDJ

JURY TRIAL DEMANDED

## <u>DECLARATION OF DAVID MAGERMAN</u>

I, David Magerman, declare as follows:

1.      I am the Plaintiff in this action and have personal knowledge of the facts set forth in this declaration.

2.      On or about May 5, 2017,  I filed an action against Robert Mercer in this Court, which was docketed as Case No.  2:17-cv-02083 (the "<u>Prior Action</u>").

3.      On or about May 9, 2017, I filed a Notice of Claim and Demand for a JAMS Employment Arbitration in the matter captioned *Magerman v. Renaissance Technologies LLC,* which was assigned a JAMS Case No. 1425023846 (the "<u>JAMS Proceeding</u>").

4.      On June 26, 2017, JAMS appointed the Honorable Frank Maas as the Arbitrator in the JAMS Proceeding.

5.      On June 30, 2017, shortly after the Arbitrator was selected, the parties to the JAMS Proceeding engaged in settlement discussions and wrote a joint letter to the JAMS Case Administrator asking for a stay of the proceedings pending the outcome of those discussions.

6.      After the ensuing holiday weekend, on July 5, 2017, a Notice of Dismissal without prejudice was filed in the Prior Action (the "<u>Dismissal Notice</u>").

7.      Contrary to the statements made by Mr. Mercer at page 1 of his Memorandum in Support of Rule 11 Sanctions ("Memorandum"), the Dismissal Notice was not filed because of a realization by either me or my counsel that the Prior Action was fatally flawed. Rather, it was filed because I mistakenly believed that Mr. Mercer was going to participate in the settlement discussions and dismissing the Prior Action was my act of good faith in connection with those discussions.

8.      As it turned out, however, Mr. Mercer, through counsel or otherwise, refused to participate in the settlement discussions, and Renaissance and I ultimately were unable to resolve our differences, especially in light of Mr. Mercer's refusal to participate in the process.

9.      The statement made by Mr. Mercer at page 3 of his Memorandum that I "walked away from settlement" is not an accurate representation of what transpired in the confidential settlement discussions. Moreover, given Mr. Mercer's decision not to participate in the settlement discussions, it is especially inappropriate for him (or his counsel) to discuss or purport to know anything about what transpired in those negotiations.

10.     On August 3, 2017:

(a)      The parties to the JAMS Proceeding (Renaissance and I) asked the JAMS Case Administrator to lift the stay and allow the JAMS Proceeding to continue;

(b)      Cozen O'Connor, my counsel at the time ("Prior Counsel"), submitted to JAMS a Motion For Leave To File an Amended Notice of Claim and Demand for Arbitration (the "Motion To Amend"), together with a proposed Amended Notice of Claim and Demand for Arbitration (the "Proposed Amended Claim"); and

(c)      I filed this Action against Mr. Mercer.

11.     In addition, in order that the JAMS Proceeding could move forward, on or about that same date, August 3, 2017, the JAMS Case Administrator requested that Renaissance, as

Respondent, pay its required preliminary retainer (the "Renaissance Retainer"), which it had not paid as of the date of the prior June 30, 2017 stay.

12.     On August 22, 2017, Lauren Reiter Brody, Esquire, counsel for Renaissance, wrote to my counsel, H. Robert Fiebach, Esquire, of Cozen O'Connor, demanding withdrawal of the JAMS Proceeding.  A copy of that letter is attached hereto as Exhibit A.

13.     At no time between August 3, 2017, and the filing of the Motion to Compel in this action, did Renaissance ever remit the Renaissance Retainer to JAMS, effectively shutting down the JAMS Proceeding.

14.     As a result of Renaissance's failure to submit the Renaissance Retainer, the JAMS Case Administrator refused to forward the Motion To Amend or the Proposed Amended Claim to the Arbitrator, Judge Maas.

15.     Jason C. Schwartz, Esquire, counsel for defendant Mercer in this action, has submitted a Declaration dated September 5, 2017, in support of the Motion for Rule 11 Sanctions (the "Schwartz Declaration"). At paragraph 6 of the Schwartz Declaration, he states, "Attached hereto as Exhibit E is a true and correct copy of the Amended Notice of Claim and Demand For Arbitration in *Magerman v. Renaissance Technologies LLC,* dated August 3, 2017." *See* Schwartz Declaration at ¶6.

16.     The Schwartz Declaration fails to mention that its Exhibit E is only a proposed amended claim.  Mr. Schwartz also fails to disclose that, as of September 8, 2017, the date that he signed his declaration, the JAMS Case Manager was refusing to forward the Motion To Amend or the Proposed Amended Claim to the Arbitrator because of Renaissance's failure to remit the required Renaissance Retainer.

17.     In other words, as of the filing of the Motion to Compel, the JAMS Proceeding was stopped dead in its tracks because of Renaissance's failure to comply with its arbitration duties to pay required fees.

18.     As stated above, I initially was represented in this matter by Cozen O'Conner.  On September 5, 2017, Cozen O'Conner withdrew its appearance and substitute counsel, Klehr Harrison Harvey Branzburg LLP ("New Counsel"), entered its appearance in this action.

19.     By letter dated August 14, 2017, from counsel for Mr. Mercer to my prior counsel Cozen O'Connor, Mr. Mercer stated his intent to seek sanctions pursuant to Federal Rule of Civil Procedure 11 unless I withdrew all claims and filed a "Notice of Dismissal With Prejudice" in this Action (the "Rule 11 Letter").  A copy of the Rule 11 Letter is attached hereto as Exhibit B.  In the Rule 11 Letter, although Mr. Mercer referred to the JAMS Proceeding of which Renaissance was the respondent, he did not agree to submit to arbitration.  Instead, he demanded that I withdraw all claims with prejudice, which would have left nothing to arbitrate. *See* Exhibit B.

20.     By letter dated September 8, 2017, New Counsel responded to the Rule 11 Letter (the "Response Letter").  A copy of the Response Letter is attached hereto as Exhibit C.  In the Response Letter, New Counsel pointed out, among other things, that:

> [Given] the conduct of Renaissance to date, it is debatable whether it can any longer contend that this dispute is subject to arbitration, and, therefore, whether Mr. Mercer can assert concomitant arbitration rights. Renaissance has essentially repudiated its obligation to arbitrate as evidenced by: (a) its failure to remit the required retainer to JAMS (which failure has stopped the arbitration dead in its tracks); and (b) the August 22, 2017 letter from Lauren Reiter Brody, Esquire to H. Robert Fiebach, Esquire demanding withdrawal of the arbitration. *See Nadeau v. Equity Residential Props. Mgmt. Corp.,* No. 16-CV-7986, 2017 WL 1842686 at *3 (S.D.N.Y. May 4, 2017) (holding that an employer cannot move to force arbitration when it breached the contract with the arbitration clause, noting that such a tactic would give employers "an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply

abandon them."(quoting *Brown v. Dillards, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005)).

*See* Exhibit C.

21.     Between August 3, 2017 and September 11, 2017, due to Renaissance's failure to remit the Renaissance Retainer as previously billed, the JAMS Case Administrator did not forward the Motion to Amend or the Proposed Amended Claim to Judge Maas, the Arbitrator.

22.     No doubt, Mr. Mercer shared a copy of the Response Letter dated September 8, 2017 with Renaissance.  The following week, in an attempt to cure its breach of its arbitration obligations, Renaissance changed its tune.

23.     On September 12, 2017, the JAMS Case Administrator, by email to New Counsel, advised that Renaissance had finally paid the required Renaissance Retainer, writing, "Previous counsel for Claimant, Cozen O'Connor, sent the attached motion to be forwarded to Judge Maas. I advised counsel that the motion would be forwarded once the retainer had been paid. The preliminary retainer has now been paid.  Please confirm whether or not you would like the attached motion to be sent to Judge Maas."  A copy of that email is attached hereto as Exhibit D.

24.     In addition, on September 12, 2017, Lauren Reiter Brody, Esquire, counsel for Renaissance, wrote to New Counsel, in which she stated, "Renaissance looks forward to resolving this matter in Arbitration…"  A copy of that letter is attached hereto as Exhibit E.

25.     On September 18, 2017, in light of Renaissance having finally remitted the required Renaissance Retainer, New Counsel, on my behalf, contacted Defendant and provided a proposed "Stipulation Regarding Defendant's Motion To Compel Arbitration And Dismiss And [Proposed] Order To Arbitrate And Stay This Action."  A copy of that email and proposed stipulation is attached hereto as Exhibit F.

26.     On September 19, 2017, the parties entered into a "Stipulation Regarding Arbitration And [Proposed] Order To Arbitrate And Stay This Action," which was submitted to the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of September 2017.

David Magerman

# EXHIBIT  A

# Brody & Browne LLP

One Penn Plaza, Suite 3512
New York, NY 10119
Telephone: 212.414.9161
Facsimile:  212.208.4610

Lauren Reiter Brody
Email: lbrody@brodybrowne.com

August 22, 2017

**Via Email**

H. Robert Fiebach, Esq.
Cozen O'Connor P.C.
1650 Market Street, Suite 2800
Philadelphia, PA 19103

> Re:   Magerman v. Renaissance Technologies LLC;
>        <u>JAMS Ref. No. 1425023846</u>

Dear Bob:

As you know, this firm represents Renaissance Technologies LLC ("Renaissance") in the above-referenced arbitration.  I write with respect to the proposed amended arbitration demand (the "Amended Demand") of your client David Magerman ("Magerman").  The claims therein cannot be asserted in good faith, and you should not proceed with them.  The deficiencies outlined in this letter are by no means exhaustive, and we point out only some of the more egregious defects in Magerman's claims.  Indeed, the fabricated claims are legally flawed in so many ways that it is hard to know where to begin.

A.  The Proposed Claims Are Deficient
    <u>As A Matter Of Law.</u>

As set forth below, the motion to amend the demand is meritless and should be denied as futile.  Each of the claims is plainly insufficient on its face.

1.    <u>Magerman has no New York Labor Law claim</u>.  Magerman persists with his wrongful allegation that Renaissance discharged him for engaging in "political activities", in violation of New York Labor Law Section 201-d.  The statute makes clear that this claim is frivolous.  The definition of "political activities" is plainly set forth in the first line of Section 201-d(1)(a).  It explicitly and unequivocally defines political activities as "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group".  At no point in the course of his slanderous tirade in the media against Robert Mercer ("Mercer") did Magerman run for public office, campaign for a candidate, or participate in fund-raising activities.  The Amended Demand makes no mention of any such activities, nor does it allege they had anything to do with his separation from Renaissance.  This claim was, and remains, entirely baseless.  *See Wehlage v. Quinlan*, 55 A.D.3d 1344 (4th Dep't 2008) (dismissing claim where none of plaintiff's activities fell within any of the definitional categories); *Liu v. Morgan Stanley*, 2013 WL 5740205, at *1 (N.Y. County Oct. 15, 2013) (same).

H. Robert Fiebach, Esq.
August 22, 2017
Page 2

      2.    <u>Magerman has no Section 1981 claim</u>.  Magerman's Section 1981 retaliation claim regarding Renaissance's hiring of African-Americans is also unsupportable.  Magerman asserts that he engaged in protected activity by allegedly "reporting Mercer's racist comments to [Peter] Brown, calling attention to the negative impact that Mercer's public political views, association with the alt-right, and racist comments were having on the image and reputation of Renaissance to Brown and others in management . . . and exercising his right to free speech" (Amended Demand ¶ 79).  Putting aside the fact that the alleged comments are not race-based, and that Magerman himself is obviously not African-American, the allegations do not state a claim as a matter of law.  It is well-established that "[c]omplaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by federal law".  *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 322-23 (E.D.N.Y. 2014).  *See also Mineweaser v. City of N. Tonawanda*, 2016 U.S. Dist. LEXIS 37262, at *43 (W.D.N.Y. Mar. 21, 2016) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity").

      The "report" that Magerman allegedly made has no conceivable connection to racial discrimination in hiring.  All that Magerman alleges is that he "**intended to convey**, *inter alia*, that Mercer's publicly-stated views prevented the company from hiring a more diverse workforce of Highly-Compensated Employees" (Amended Demand ¶ 36; emphasis added).  This, of course, underscores the deficiency of the claim since he admits that he **did not actually convey** that Renaissance was engaging in prohibited conduct in connection with its hiring practices.  *See, e.g., Benedith*, 38 F. Supp. 3d at 322 ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to [] membership in a protected class"); *Ramos v. City of New York*, 1997 U.S. Dist. LEXIS 10538, at *6 (S.D.N.Y. July 21, 1997) (holding that plaintiff did not engage in protected activity where he "believed that [his supervisor] would 'pick up the gist' of what he was talking about and understand that he was describing discriminatory treatment even if he never used the term").  Thus, there is no protected activity.

      Magerman also does not allege that he acted with a good faith, reasonable belief that Renaissance was violating Section 1981.  *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013) (upholding dismissal of retaliation claim where plaintiff failed to sufficiently allege that she had a good faith, reasonable belief that the conduct at issue violated the statute).  Such failure is not surprising because Magerman's alleged "report" concerned his personal political differences with Mercer -- not any purported violation of the rights of African-American individuals to make and enforce contracts with Renaissance.  For this reason as well, Magerman has no Section 1981 claim.

      Even if Magerman could somehow manufacture a protected activity (and he cannot), the Section 1981 claim would still be foreclosed because he admits that his alleged report of race-based employment discrimination was not the "but-for" cause of any adverse job action.  The Supreme Court has made clear that "but-for" causation is required to state a claim.  *See Univ. of Tex. S.W. Med. Ctr. v. Nassar,* 570 U.S. ___, 133 S. Ct. 2517, 2534 (2013) ("[A] plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").  *See also Pena-Barrero v. City of New York*, 2017 U.S. Dist. LEXIS 47983, at *45 (S.D.N.Y. Mar. 30, 2017) (applying but-for causation standard in

H. Robert Fiebach, Esq.
August 22, 2017
Page 3

dismissing Section 1981 retaliation claim); *Duplan v. City of New York*, 2017 U.S. Dist. LEXIS 50395, at \*13-16 (E.D.N.Y. Mar. 30, 2017) (dismissing retaliation claim where plaintiff failed to allege circumstances to infer that protected activity was the but-for cause of any adverse action). Magerman takes the position that he "gave an interview to a reporter for the *Wall Street Journal*, in which Magerman criticized President Trump and Mercer's support for the President's agenda", that "[his] suspension was in retaliation for his criticisms of Mercer's political activities and the causes he supports", and that "Renaissance, in further retaliation for Magerman's criticisms of Mercer's political activities and the causes he supports, fired Magerman as of April 29, 2017" (Amended Demand ¶¶ 57, 64, 72). Given these other causes, Magerman's so-called "report" of racial discrimination in hiring cannot be the "but-for" cause of any action against him.

Try as he might, Magerman's cannot shoehorn his personal gripes about Mercer's politics into a legally cognizable Section 1981 claim. It is particularly disingenuous for Magerman to pretend he is championing the rights of African-Americans given his own publicly-reported statements against them.

3.  Magerman has no wrongful discharge claim. Magerman's newfound wrongful discharge claim fares no better. As the New York Court of Appeals has repeatedly held, "there is no cause of action in tort for abusive or wrongful discharge of an at-will employee". *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 188 (1989); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 297 (1983) ("This court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge of an employee"). Thus, "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired". *Murphy*, 58 N.Y.2d at 305. *See also Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008) ("In the decades since *Murphy*, we have repeatedly refused to recognize exceptions to, or pathways around, these principles").

Magerman's employment agreement leaves no room for doubt, and expressly provides, that his employment is "at will" and may be terminated "for any reason or no reason at all, with or without cause or notice" (Employment Agreement ¶ 2). It further states that his at-will status "may not be amended or modified except by a written instrument signed by both the Company and Employee" (*Id.* at ¶ 18).

Magerman cannot avoid his at-will status by alleging that he "received approval . . . to speak to the press," and that Renaissance is "bound by express statements limiting its right to discharge employees" (Amended Demand ¶¶ 94-95). Even if this were true (which it is not), the allegation is wholly insufficient. New York law requires that any such approval **be in writing**. *See Gmora v. State Farm Mut. Auto. Ins. Co.*, 709 F. Supp. 337, 339 (E.D.N.Y. 1989). "[O]ral assurances of employment only support an express written limitation but do not in and of themselves create such a limitation". *Soto v. Federal Express Corp.*, 2008 U.S. Dist. LEXIS 7688, at \*20 (E.D.N.Y. Jan. 31, 2008). *See also Estronza v. RJF Sec. & Investigations*, 2014 U.S. Dist. LEXIS 159888, at \*12 (E.D.N.Y. Aug. 27, 2014) ("Even accepting all of his allegations as true, he can establish only an oral promise -- but [New York courts] require an 'express written policy' limiting the employer's termination rights"). Thus, Renaissance had an unfettered right to terminate Magerman's employment.

H. Robert Fiebach, Esq.
August 22, 2017
Page 4

B.  The Attorneys Should Not Bring
    This Frivolous Proceeding.

     The conclusion is inescapable that Magerman cannot allege any wrongdoing whatsoever by Renaissance -- or Mercer, for that matter.  It is apparent that Magerman harbors personal malice against Mercer, which stems from, among other things, his inability to use the Mercer family to connect with the President's Administration.  He has no dispute with Renaissance at all.  You need go no further than Magerman's twitter account in which he admits, "I'm not really at war with," the "people" at Renaissance. (@DavidMagerman, Twitter (Aug 4. 2017, 7:52 AM), https://twitter.com/DavidMagerman/status/893439502152237056.  Nevertheless, he has engaged your firm to harass his former employer simply because of Mercer's association with it.  As an attorney, you are ethically bound to refrain from bringing bad faith claims on behalf of a client.  To that end, you either knew, or should have known, that these claims are frivolous and an abuse of legal process.  You certainly know it now.  We note that none of the attorneys representing Magerman in this arbitration are admitted to the New York State bar.  This, however, is not an excuse for ignorance, or misuse, of New York State or federal law.

     In light of the foregoing, I have no choice but to remind you of your ethical obligations as a legal professional:

Rule 3.1 Meritorious Claims and Contentions:

**A lawyer shall not bring or defend a proceeding**, or assert or controvert an issue therein, **unless there is a basis in law and fact for doing so that is not frivolous**, . . .

Comment:

1.  The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also **a duty not to abuse legal procedure**. . . .
2.  The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. **What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.** Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

Rule 1.1 Competence:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

H. Robert Fiebach, Esq.
August 22, 2017
Page 5

      Comment:

    5.   Competent handling of particular matter includes inquiry into and analysis of the factual and legal elements of the problem . . .

Pa. Rules of Prof'l Conduct (2017) (emphasis added).

      Accordingly, you should immediately withdraw the motion to amend as well as the initial demand.  Renaissance hereby reserves all rights and remedies against you and your client in connection with the harassing and vexatious claims.

      Be guided accordingly.

                          Very truly yours,

                          Lauren Reiter Brody

# EXHIBIT  B

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

August 14, 2017

<u>VIA UPS AND ELECTRONIC MAIL</u>

H. Robert Fiebach, Esq.
Jeffrey I. Pasek, Esq.
Thomas A. Leonard, Esq.
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Re:   <u>Defendant Robert Mercer's Intent to Seek Sanctions Pursuant to Federal Rule of Civil
      Procedure 11 ("Rule 11") in *Magerman v. Mercer*, No. 2:17-cv-03490 (E.D. Pa.)</u>

Dear Counsel:

As you know, we are counsel for Robert Mercer.  In accordance with Federal Rule of Civil
Procedure 11(c), we write to provide you with the enclosed Motion and Memorandum in
Support of Motion for Sanctions Pursuant to Rule 11, and hereby demand that you withdraw
your offending Complaint against our client, pursuant to Rule 11's safe harbor provision.

Like your May filing, this frivolous Complaint is an obvious attempt by your client to
generate publicity for his personal and political gain by defaming Mr. Mercer with baseless
and inflammatory allegations.  It is truly an outrage, and you could not have filed it in good
faith.  Indeed, it is inconceivable to us that any responsible lawyer could file this new
Complaint, which fails to address the basic and fatal deficiencies outlined in the Rule 11
motion we previously served on you.  Hence, if you do not withdraw all claims and
allegations against Mr. Mercer, we intend to file a motion for Rule 11 sanctions.

As you know, Rule 11 of the Federal Rules of Civil Procedure imposes a duty to present only
those legal claims that are "warranted by existing law," Fed. R. Civ. P. 11(b)(2), and
prohibits filings made "for any improper purpose," Fed. R. Civ. P. 11(b)(1).  The Complaint
filed in this case, however, demonstrates that you and your client acted in complete disregard
of these obligations.

First, as set forth in detail in the enclosed Rule 11 filing, even if the fictional narrative in the
Complaint were true, neither the Section 1981 claim nor the Pennsylvania wrongful
discharge claim is remotely plausible under clearly established law.  *See* Mem. in Support of

GIBSON DUNN

August 14, 2017
Page 2

Mot. for Sanctions at 11-31.  Among other things, the Complaint does not even allege conduct prohibited by Section 1981 or Pennsylvania common law.  *See id.*

Second, the Complaint was filed in clear violation of your client's "agree[ment] that any disputes arising out of or relating to . . . [his] employment with [Renaissance], including but not limited to tort claims, claims relating to intellectual property, and claims for discrimination, sexual harassment and retaliation, shall be settled by binding arbitration" before JAMS.  *See* Mem. in Support of Mot. for Sanctions at 31-35.  Tellingly, your client instituted a JAMS arbitration against Renaissance under this clearly governing arbitration provision contemporaneously with the filing of the May Complaint, and on the day this new Complaint was filed, he filed a matching amended arbitration demand against the Company.  Thus, as before, he is pressing before JAMS allegations nearly identical to those in this lawsuit; indeed, the vast majority of the Amended Demand is a *verbatim* copy of the Complaint against Mr. Mercer.  There is absolutely no good faith basis for you or your client to assert that the claims in the Complaint are somehow exempt from the same arbitration provision under which Mr. Magerman brought his mirror-image claims against Renaissance.  *See id.*

Third, as your client essentially admits in his public statements, the Complaint was clearly filed for the improper purposes of (a) publicly smearing Mr. Mercer in order to generate attention and publicity for your client and (b) harassing Mr. Mercer for his political beliefs.  *See, e.g.*, David M. Magerman, *When a Hedge Fund Billionaire 'Buys' Democracy: Magerman on Mercer*, philly.com (Mar. 1, 2017), http://www.philly.com/philly/blogs/inq-phillydeals/Billionaires_and_Democracy_Magerman_Mercer_Renaissance_Trump_Bannon_Conway.html (expressing Mr. Magerman's desire to "fully convey" his political opinion before his "15 minutes tick down"); Mem. in Support of Mot. for Sanctions at 28-30.  Mr. Magerman's decision to file the Complaint publicly, notwithstanding his clear contractual obligation to bring all such claims—whether against Renaissance or one of its executives—in a JAMS arbitration, further underscores his bad faith and improper motives.  This bad faith is underscored by the timing and circumstances of this latest maneuver, coming just after Mr. Magerman walked away from settlement talks with the company.  *See* @DavidMagerman, Twitter (Aug. 4, 2017, 4:21 AM), https://twitter.com/DavidMagerman/status/89343176602284416 ("Tried to negotiate settlement with #RenTech + ground rules for future engagement.  Talks failed.  Refiled lawsuit against #Mercer yesterday.").

Accordingly, it is incumbent upon you and your client to immediately withdraw all claims and allegations in the offending Complaint pursuant to Rule 11's safe harbor provisions.

I look forward to the prompt filing of a Notice of Dismissal with Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Mr. Mercer reserves all rights and remedies

# GIBSON DUNN

August 14, 2017
Page 3


(including but not limited to his right to move to dismiss the Complaint, to move to compel arbitration, and to seek sanctions), and waives none.

Sincerely,

Randy M. Mastro

Randy M. Mastro

RMM/nlf
Enclosures

# EXHIBIT  C

# KLEHR ı HARRISON ı HARVEY ı BRANZBURG LLP

William A. Harvey
Direct Dial: (215) 569-3003
Email: WHARVEY@klehr.com

September 8, 2017

**VIA ELECTRONIC MAIL**
Randy M. Mastro, Esquire
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

Re:   **Defendant Robert Mercer's Intent in *Magerman v. Mercer*, No. 2:17-cv-03490 (E.D. Pa.)**

Dear Mr. Mastro:

As you know, Mr. Magerman recently engaged this law firm to represent him and on September 5, 2017, we entered our appearance in the above-captioned action. We are writing in response to your letter dated August 14, 2017 to prior counsel Cozen O'Connor, wherein you state that Defendant Robert Mercer intends to seek sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") unless Mr. Magerman files a Notice of Dismissal with Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(a)(i) by the safe harbor deadline of Rule 11. Reference is also made to the email dated September 1, 2017 from your colleague Jason Schwartz, Esquire to Robert Fiebach, Esquire and Rona Rosen, Esquire reiterating the Rule 11 demand if the Complaint in this action is not dismissed by September 8, 2017 at 5:00 o'clock p.m.

As discussed below, any attempt by Mr. Mercer and your law firm to obtain Rule 11 sanctions via the filing of the draft Motion for Rule 11 Sanctions that was enclosed in your August 14, 2017 letter (the "Proposed Motion") would be improper and fail. Further, the filing by Mr. Mercer and your law firm of the Proposed Motion would itself constitute a Rule 11 violation for which Mr. Magerman would seek costs and fees under subsection (c)(2) of Rule 11. *See Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 485 (3d Cir. 1987) ("The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.").

Your letter, Mr. Schwartz's email, and the accompanying Proposed Motion, on their face, represent a blatant attempt by Mr. Mercer and your law firm to intimidate and bully Mr. Magerman, all to further Mr. Mercer's goal of depriving Mr. Magerman of the remuneration that is owed to him by Renaissance Technologies L.L.C. ("Renaissance"), the investment company of which Mr. Mercer is co-Chief Executive Officer. It is especially galling that Mr. Mercer seeks to

KLEHR I HARRISON I HARVEY I BRANZBURG ᴸᴸᴾ

Randy M. Mastro, Esquire
September 8, 2017
Page 2

deprive Mr. Magerman of that which is due him by Renaissance given that Mr. Magerman, in his over two decades of service to Renaissance, has written algorithms and developed investment programs for Renaissance that have helped make Mr. Mercer one of the wealthiest people in the United States.

Your letter and the Proposed Motion (as well as the recently filed Motion To Dismiss) are disturbing for reasons well beyond their mischaracterization of applicable law; they are peppered with gratuitous insults and statements which you and your client know to be false. For instance, Mr. Magerman dismissed the prior suit against Mr. Mercer (No. 2:17-cv-02083) (the "Prior Action") only as a good faith gesture during the pendency of settlement negotiations led by Renaissance this summer, and not because of a realization of any "fatal flaws" in his claims against your client. Mr. Magerman reinstituted this action after those settlement negotiations fell apart, due in large part because of your client's refusal to negotiate. Similarly, Mr. Mercer's attempt to paint Mr. Magerman as a vindictive irrational person is disturbing because your client knows that his characterizations of Mr. Magerman are false. Mr. Magerman, in addition to being a brilliant computer scientist, is an upstanding citizen and community leader. Further, given that Mr. Mercer's political beliefs and his related affiliations are public knowledge, Mr. Mercer and you cannot now genuinely claim that Mr. Magerman is engaging in a smear campaign to expose Mr. Mercer's political beliefs and affiliations. Mr. Mercer's political views are well-known, as is the fact that he furthers them through various avenues, including the news media, organizations and political campaigns.

With the foregoing said, you claim in your letter that this Action was filed in clear violation of an arbitration provision contained in Mr. Magerman's employment contract with Renaissance. We see several problems with respect to this argument:

First, given the conduct of Renaissance to date, it is debatable whether it can any longer contend that this dispute is subject to arbitration, and, therefore, whether Mr. Mercer can assert concomitant arbitration rights. It appears to us that Renaissance has essentially repudiated its obligation to arbitrate as evidenced by: (a) its failure to remit the required retainer to JAMS (which failure has stopped the arbitration dead in its tracks); and (b) the August 22, 2017 letter from Lauren Reiter Brody, Esquire, counsel for Renaissance, to Mr. Fiebach demanding withdrawal of the arbitration. *See Nadeau v. Equity Residential Props. Mgmt. Corp.,* No. 16-CV-7986, 2017 WL 1842686 at *3 (S.D.N.Y. May 4, 2017) (holding that an employer cannot move to force arbitration when it breached the contract with the arbitration clause, noting that such a tactic would give employers "an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them.") (quoting *Brown v. Dillards, Inc.,* 430 F.3d 1004, 1012 (9th Cir. 2005)).

Second, Mr. Mercer, through his heavy-handed Rule 11 tactics in this Action, has waived any right he may have had to arbitrate. Specifically, even before filing a Motion to Compel Arbitration, Mr. Mercer invoked Rule 11 to force a substantive disposition of this Action. Via your letter dated August 14, 2017, Mr. Schwartz's email of September 1, 2017, and the Proposed Sanction Motion, Mr. Mercer has improperly sought to pressure Mr. Magerman to dismiss his

KLEHR I HARRISON I HARVEY I BRANZBURG LLP

Randy M. Mastro, Esquire
September 8, 2017
Page 3

claims with prejudice, the end result of which would be to leave Mr. Magerman with no claims to arbitrate. Moreover, were Mr. Mercer to move forward with the filing of a Rule 11 Motion, that would further confirm his waiver of any arbitration right by affirmatively asking the Court to consider the substantive merits of the claims in the hopes of obtaining a sanction award.

Third, the right to arbitrate is otherwise waivable. If Mr. Mercer truly desired to invoke his right to arbitrate, he should have stated his willingness and desire to arbitrate from the outset. He could have filed a Motion To Compel Arbitration in the Prior Action, plain and simple, or sought a stipulation in that regard. He did not do either in the Prior Action, but instead also pursued an aggressive Rule 11 strategy similar to that which he is pursuing in this Action.

Fourth, even if the court were to find that arbitration is warranted, Mr. Mercer would not be entitled to dismissal of the claims on the basis of an arbitration clause. Based on binding Third Circuit law and the plain language of Section 3 of the Federal Arbitration Act (the "FAA"), the court has no authority to dismiss the action (with or without prejudice) even if all claims are arbitrable, when one party requests a stay (which Mr. Magerman would do in this case). *See Lloyd v. Hovensa LLC,* 369 F.3d 263, 269-71 (3d Cir. 2004); *Devon Robotics LLC v. DeViedma,* 798 F.3d 136, 142-44 (3d Cir. 2015). Indeed, Mr. Mercer recognized this legal point when he quoted the mandatory language in Section 3, and none of the cases Mr. Mercer cites in his Motion to Dismiss alter this conclusion. Several of these cases were decided before *Lloyd*; it appears that none of the parties in the cases Mr. Mercer cited requested a stay; and even the court in *DiMattei v. Diskin Motors, Inc.,* CA No. 16-5183, 2017 WL 1283943 at *2 n.2 (E.D. Pa. April 6, 2017), recognized that a stay is the only appropriate remedy if a party requests it. Not only this, but nothing in Section 4 of the FAA requires dismissal rather than a stay. Further, while the court in *Heron v. Sky NJ LLC,* CA No. 15-5686, 2016 WL 705246 at *2 (E.D. Pa. Feb. 23, 2016), held that a motion to compel arbitration should be considered under "a Rule 12(b)(6) standard" if "it is apparent, based on the face of the complaint, and documents relied upon in the complaint," that the claims should be arbitrated, this does not mean that the court must dismiss the action as it would on a successful 12(b)(6) motion. Rather, the concept enunciated by the *Heron* court speaks to whether a court should decide a motion to compel arbitration based only on matters in the complaint and supporting documents thereto. *See id.*

As to your threat to pursue Rule 11 sanctions for the Section 1981 claim and the wrongful discharge claim, we disagree that such sanctions are warranted and would vigorously oppose any such motion. Rule 11 sanctions are appropriate "only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir. 1991). Those exceptional circumstances do not exist in this case.

Regarding the Section 1981 retaliation claim, Mr. Magerman sufficiently pleads all of the required elements. Among other things, Mr. Magerman alleges that he was retaliated against for trying to help other individuals, who he believed suffered discrimination, to secure their Section 1981 rights, *see Ellis v. Budget Maint., Inc.,* 25 F. Supp.3d 749, 753 (E.D. Pa. 2015), Mr.

KLEHR I HARRISON I HARVEY I BRANZBURG℠

Randy M. Mastro, Esquire
September 8, 2017
Page 4

Magerman points to a combination of Mr. Mercer's actions/statements and statistical evidence to assert an underlying "pattern-or-practice" disparate treatment claim. *See Young v. United Parcel Serv. Inc.*, __ U.S. __, 135 S. Ct. 1338, 1355 (2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for the principle that a plaintiff may prove intentional discrimination through statistics showing how an employer's policy and practice operates in practice); *see also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (anecdotal evidence can "bring the cold numbers to life"); *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp.2d 1, 8 (D.D.C. 2004) (using statistical evidence to prove disparate treatment claim); *Estate of Oliva v. State of N.J. Dep't of Law & Pub. Safety*, 604 F.3d 788 (3d Cir. 2010).[1]

Notwithstanding the merits of the Section 1981 claim, we would be amenable to dismissing the claim at this juncture subject to a stipulation by the parties that the dismissal is without prejudice.

Regarding the wrongful discharge claim, even you have conceded that the Third Circuit in *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 112-13 (3d Cir. 2003), reaffirmed the court's holding in *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 900 (3d Cir. 1983), that a private employee may state a claim for wrongful discharge when his termination violated the public policy against "forced political speech." Mr. Magerman contends that, by trying to silence him, Mr. Mercer was making Mr. Magerman tacitly accept Mr. Mercer's views and co-opting Mr. Magerman's conduit for speech, which is tantamount to "forced political speech." Notably, the *Fraser* court does not define this quoted term and the case you cite in your Proposed Motion - *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) – is distinguishable and otherwise does not foreclose Mr. Magerman's claim.

Further, even if Mr. Magerman does not ultimately succeed on his claims, Rule 11 sanctions would not be warranted. It is well settled that Rule 11 must not be used as an automatic penalty against an attorney or party merely for advocating the losing side of a dispute and, similarly, Rule 11 should not be applied to "responsible lawyering which advocates creative legal theories." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010).

Although we are new to the case, our hope is that we, as attorneys, could work in a civil and professional manner to litigate and ultimately resolve the disputes. Your continued stated intent to pursue relief under Rule 11, however, is a vexatious tactic and a transparent ploy to intimidate Mr. Magerman. We urge you to rethink your Rule 11 threat, refrain from filing the

---

[1] While *McDonnell Douglas* was a discrimination claim under Title VII, discrimination claims under Section 1981 are analyzed under the same framework. *See Greer v. Mondelez Global, Inc.*, 590 Fed. Appx. 170, 172 n. 4 (3d Cir. 2014); *Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378, 385 (3d Cir. 1999).

KLEHR I HARRISON I HARVEY I BRANZBURG LLP

Randy M. Mastro, Esquire
September 8, 2017
Page 5

Proposed Motion and proceed without the vitriolic and ad hominem attacks.

Very truly yours,

William A. Harvey

WAH/cae

cc: Jason Schwartz, Esquire (via email only)
Mylan L. Denerstein, Esquire (via email only)
Rona J. Rosen, Esquire
David Magerman (via email only)

# EXHIBIT  D

## Rosen, Rona

| | |
|---|---|
| **From:** | Kristen Maccubbin <kmaccubbin@jamsadr.com> |
| **Sent:** | Tuesday, September 12, 2017 9:38 AM |
| **To:** | Rosen, Rona; Harvey, William |
| **Cc:** | Lauren Brody; lblackwell@brodybrowne.com |
| **Subject:** | RE: Magerman v. Renaissance Technologies LLC, Case No. 1425023846 |
| **Attachments:** | Motion for Leave to File Amended Notice of Claim and Arbitration Demand.pdf; Exhibit A to Motion for Leave (Amended Arbitration Demand).pdf; Exhibit B to Motion for Leave (Employment Agreement).pdf |

Counsel,

Previous counsel for Claimant, Cozen O'Connor, sent the attached motion to be forwarded to Judge Maas. I advised counsel that the motion would be forwarded once the retainer had been paid. The preliminary retainer has now been paid. Please confirm whether or not you would like the attached motion to be sent to Judge Maas.

Best,
Kristen



**Kristen Maccubbin**
Assistant Manager

620 Eighth Avenue, 34th FL
New York, NY, 10018
**P:** 212.607.2762
**F:** 212.751.4099

JAMS was named <u>Mediation Firm of the Year</u> in *Who's Who Legal* 2017.

<u>U.S.</u> | <u>International</u> | <u>LinkedIn</u> | <u>Twitter</u>

**From:** Leonard, Thomas A. [mailto:TLeonard@cozen.com]
**Sent:** Thursday, August 03, 2017 4:50 PM
**To:** Kristen Maccubbin <kmaccubbin@jamsadr.com>; Patricia Bargielski <pbargielski@jamsadr.com>
**Cc:** Lauren Brody <LBrody@brodybrowne.com>; Fiebach, H. Robert <RFiebach@cozen.com>; Pasek, Jeffrey I. <JPasek@cozen.com>
**Subject:** Magerman v. Renaissance Technologies LLC, Case No. 1425023846

Dear Ms. Maccubbin and Ms. Bargielski,

I write to inform you that the parties' settlement discussions have ended without an agreement being reached. We therefore will continue the arbitration.

We respectfully request that you inform Judge Maas of this development and that you send him the attached motion.

Thanks,
Tom

**Thomas A. Leonard**
**Associate Attorney | Cozen O'Connor**
One Liberty Place | 1650 Market Street, Suite 2800 | Philadelphia, PA 19103
P: 215-665-7244 F: 215-701-2048
Email | Bio | Map | cozen.com

*Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*

# EXHIBIT  E

# Brody & Browne LLP

One Penn Plaza, Suite 3512
New York, NY 10119
Telephone: 212.414.9161
Facsimile:  212.208.4610

Lauren Reiter Brody
Email: lbrody@brodybrowne.com

September 12, 2017

**Via Email**

Rona J. Rosen, Esq.
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103

   Re: Magerman v. Renaissance Technologies LLC;
     JAMS Ref. No. 1425023846

Dear Rona:

  As you know, this firm represents Renaissance Technologies LLC ("Renaissance" or the "Company") in connection with disputes concerning David Magerman ("Magerman"), including those that are the subject of the above-referenced arbitration (the "Arbitration"). I write to follow up on our conversation last week, provide you with documents and background since you are new to this matter, and remind you and your client of certain obligations.

  Magerman was an at-will employee and research scientist at Renaissance. He separated from the Company in the spring after violating Renaissance's policies and his employment agreement (the "Employment Agreement"), which is Attachment A hereto, including by his disloyalty and disparagement of Renaissance's co-CEO, Robert Mercer. Prior to his termination, Renaissance offered Magerman multiple opportunities to continue employment if he could assure the Company that he could perform his duties loyally, cooperatively, and without further conflict. Magerman, however, refused to do so, thus leaving Renaissance with no choice but to let him go. I refer you to Renaissance's Answer, Affirmative Defenses And Counterclaims in the Arbitration, which is Attachment B hereto, for further information about Magerman's misconduct.

  In May, Magerman instituted the Arbitration pursuant to his Employment Agreement. Even though he was the agent of his own discharge, and his improper behavior necessitated it, Magerman asserted claims against the Company for violation of Section 1981 of the Civil Rights Act (asserting that his activities pertained to the rights of African Americans, even though they did not) and New York State Labor Law Section 201-d (disregarding the fact that he did not engage in any of the political activities protected by the statute). In August, Magerman moved to add a claim for wrongful discharge, disregarding well-settled jurisprudence that makes clear there is no such claim under New York law for an at-will employee.

  On August 22, I wrote to Bob Fiebach ("Fiebach"), the attorney who filed the claims in the Arbitration. The letter is Attachment C hereto. As you will see, the deficiencies of each of

Rona J. Rosen, Esq.
September 12, 2017
Page 2

Magerman's claims are explained, and the relevant and controlling authorities identified. Furthermore, assertion of such claims is inconsistent with an attorney's professional obligations. In light of the foregoing, I asked Fiebach to withdraw the claims and, as a courtesy, deferred paying the JAMS fee until I received a response. To date, however, I have not received a response to my letter, and as you know, Fiebach's firm has withdrawn from representing Magerman altogether. In view of the foregoing, the fee has now been paid. Nevertheless, we hope that upon review of Attachment C and the authorities cited therein, you will withdraw these frivolous claims -- as you should. If you do not do so, we will have no choice but to defend our client in the Arbitration and otherwise.

As we discussed, the parties engaged in various rounds of settlement negotiations which were productive on many points but did not result in a final resolution. I note that Magerman remains bound by his obligations under the Employment Agreement and common law, including obligations with respect to non-disparagement, defamation, and confidentiality of trade secrets and intellectual property. Renaissance looks forward to resolving this matter in Arbitration and also remains receptive to considering any reasonable settlement proposal you and your client may offer.

Renaissance reserves all rights and remedies in connection with this matter.

Very truly yours,

Lauren Reiter Brody

Encls.

# EXHIBIT  F

## Rosen, Rona

| | |
|---|---|
| **From:** | Rosen, Rona |
| **Sent:** | Monday, September 18, 2017 10:54 AM |
| **To:** | Schwartz, Jason C. (JSchwartz@gibsondunn.com) |
| **Cc:** | 'rmastro@gibsondunn.com'; Harvey, William |
| **Subject:** | Magerman v. Mercer |
| **Attachments:** | Stipulation - Magerman_Mercer.DOCX |

Jason: As discussed on our call of this morning, attached please find a draft Stipulation and Proposed Order. Please advise if Mr. Mercer will enter into the Stipulation and provide any comments you have.

**Rona J. Rosen, Esq.**
KLEHR I HARRISON I HARVEY I BRANZBURG LLP
1835 Market Street, Suite 1400 | Philadelphia, PA 19103
T (215) 569-4145 | F (215) 568-6603 | rrosen@klehr.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| DAVID MAGERMAN, | : | |
| | : | |
| Plaintiff, | : | Case No.17-cv-03490-CDJ |
| | : | |
| v. | : | |
| | : | THE HONORABLE |
| ROBERT MERCER, | : | C. DARNELL JONES II |
| | : | |
| Defendant. | : | |

### STIPULATION REGARDING DEFENDANT'S
### MOTION TO COMPEL ARBITRATION AND DISMISS AND
### [PROPOSED] ORDER TO ARBITRATE AND STAY THIS ACTION

Plaintiff David Magerman ("Magerman") and Defendant Robert Mercer ("Mercer") by and through their undersigned counsel, hereby stipulate and agree as follows:

WHEREAS, Magerman is a former employee of Renaissance Technologies L.L.C. (the "Company");

WHEREAS, Mercer is the Co-Chief Executive Officer of the Company;

WHEREAS, on August 3, 2017, Magerman filed a complaint against Mercer in the above-captioned action;

WHEREAS, on September 5, 2017, Mercer filed a Motion to Compel Arbitration and Dismiss (the "Motion to Compel"), wherein he seeks to compel arbitration under the employment agreement between the Company and Magerman, dated January 1, 2015 (the "Employment Agreement") and dismiss the complaint;

WHEREAS, Magerman's response to the Motion to Compel is due on September 19, 2017;

WHEREAS, Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, provides that the court shall, upon the request of a party, stay federal court proceedings pending resolution of arbitration; and

WHEREAS, the parties have agreed to resolve the Motion to Compel as set forth below.

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, pursuant to Rule 7.4 of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania, that:

1.      The claims and defenses in the above-captioned action shall be arbitrated pursuant to Section 21 of the Employment Agreement; and

2.      This action shall be stayed pending the arbitration.


Dated: September ___, 2017


/s/ _____
William A. Harvey (PA 25344)
Rona J. Rosen (PA 32440)
KLEHR HARRISON HARVEY
 BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
T: (215) 569-2700
F: (215) 568-6603
*Counsel for Plaintiff, David Magerman*

/s/ _____
Jason C. Schwartz
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5303
T: (202) 955-8500
F: (202) 467-0539
*Counsel for Defendant, Robert Mercer*


**SO ORDERED:**


_____
HON. C. DARNELL JONES II,  U.S.D.J.


2